UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22796-CIV-LENARD/DUBÉ

IDEL REYES,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Summary Judgment filed by the Plaintiff (D.E. #12) and the Motion for Summary Judgment filed by the Defendant (D.E. #16) pursuant to an Order of Reference entered by the Honorable Joan A. Lenard, United States District Judge. The issue before this Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Idel Reyes (hereinafter "Reyes" or "Plaintiff").

### I. FACTS

On March 9, 2006, Reyes filed an application supplemental security income (SSI) alleging a disability onset date of December 21, 2005. (R. 82-88).[1] The application was denied initially and on reconsideration. (R. 46-57). An initial hearing was held on May 8, 2008. (R. 25-45). Following the hearing, the ALJ issued a decision denying the request for benefits. (R. 9-24 ). A request for review filed with the Appeals Council was denied. (R. 1-3).

---

1. All references are to the record of the administrative proceeding filed as part of the Defendant's answer.

The Plaintiff, age 24 at the time of the hearing on May 8, 2008, testified that he completed the twelfth grade in Cuba and last worked in November 2005, lifting, carrying and loading and unloading boxes. (R. 30-31). Reyes also testified that he performed that work for about a year and stopped working because there was no more work and he became sick. According to the Plaintiff, he gets depressed, anxious and sad; and cannot concentrate. (R. 31).

The Plaintiff testified that at times he feels so elated that he cannot sleep and he feels the urge to go on shopping sprees. The Plaintiff stated despite not having money he will try to buy items such as a new car, television and other things outside his reach. He further testified that he does not drive and will walk to a store when getting this urge. (R. 32). The Plaintiff said that he has been kicked out of stores on several occasions for not having any money, the most recent time being two and a half months prior to the hearing. Reyes stated that about a year prior to the hearing, he ate at a Chili's restaurant, but did not have any money to pay, so the police were called. (R. 33).

The Plaintiff stated he gets nervous around people because he thinks "they're going to do something against him" and his hands perspire as a result. He added that he goes on the aforementioned shopping sprees alone. (R. 34). Reyes testified that there are moments when he feels as though he is a millionaire. The Plaintiff stated the medications he's been given have helped him "a lot"; specifically, with the depression and anxiety. (R. 35). He further stated that he previously got depressed five times a week and with the medications the frequency has been reduced to three times a week. (R. 35-36). According to Reyes, when he is depressed he cries a lot, talks back to people, and is in a bad mood; however, he added that he does not hear voices and is not suicidal.

Reyes stated he watches television although he gets bored easily and is constantly changing channels. Additionally, he stated that being with his family makes him happy because they take care

of him as they know he is sick. (R. 36). Reyes said he lives with his mother, brother and grandmother and that he loves his family "very much." He added that he does not help with chores around the house because he doesn't like to and it is not his job. The Plaintiff testified that sometimes his grandmother will help him bathe and dress when he is depressed. (R. 37). The Plaintiff further stated that the longest he has gone without showering is two days and when he is depressed he will stay in bed all day. Reyes stated that his depression existed when he was working and he would get mad when people at work screamed at him. (R. 38).

The Plaintiff testified that while in the Army in Cuba he was hospitalized for two months after taking 45 pills. (R. 41). He further testified that he was Baker Acted in the United States from December to January. (R. 41-42). The Plaintiff stated that he is obsessive-compulsive and needs to put things in straight positions and counts steps while walking up and down them. He added that if things aren't in order he becomes angry. (R. 42). Reyes stated he does not have friends and does not talk to girls because he doesn't think they will like him and he is timid. (R. 43).

A review of the medical records and the specific issues raised by the Plaintiff in his Motion for Summary Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

On June 25, 2008, the ALJ issued a decision finding that the Plaintiff suffered from an Affective (Mood) Disorder which was severe, but did not meet or equal the severity in the listing of impairments. (R. 17, 19). The ALJ determined that the Plaintiff did retain the residual functional capacity function at all levels of physical exertion, and retained the basic mental demands of competitive, remunerative, unskilled work, and the ability on a sustained basis to understand, carry

out and remember simple, repetitive, routine instructions, to respond appropriately to supervision, coworkers, and usual work situations and to deal with changes in a routine work setting. (R. 20). The ALJ found that the Plaintiff could return to his past relevant work as a laborer, and thus, was not disabled within the meaning of the Social Security Regulations. (R. 23).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No

presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal. Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from

performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The Plaintiff contends that the ALJ erred in discounting the Plaintiff's treating psychiatrist's opinion without good cause specifically when the opinion was supported by that of the two consultative psychologists who examined the Plaintiff; that more weight was given to the opinions of two agency reviewing consultants; and that the ALJ's RFC was improper as it was not supported by substantial evidence.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

In his decision, the ALJ stated as follows:

> ... I find that Dr. Berta M. Guerra based her assessment (Exhibits 7F & 12F) of the claimant's symptoms solely on his statements to her. I give little weight to the very restricted opinions expressed by Dr. Guerra (Exhibits 7F & 12F). Dr. Guerra concluded that the claimant was unable to work. The progress notes dated December 2005 through March 2008 showed a steady and progressive improvement of his symptoms and contradict the opinions submitted by Dr. Guerra in her assessment of the claimant's symptoms. Pursuant to 20 C.F.R. Sections 404.1527(e)(3) & 416.927(e)(3), I give no special

> significance to the source of an opinion on issues reserved to the Commissioner, i.e., whether the claimant is unable to work. Such opinions are never accorded controlling weight. Moreover, her opinions are contrary to the other evidence of record.

(R. 23). The ALJ continued:

> As for the opinion evidence, my conclusion that the claimant is not disabled is further supported by the opinions of the State Agency review medical consultants at the initial and reconsiderations level who found no significant limitations for all work activity (Exhibits 2F, 3F, 8F & 9F). As those of non-examining physicians, their opinions are not entitled to controlling weight, but must be considered and weighed as those of highly qualified physicians who are considered experts in the evaluation of the medical issues in disability claims under the Social Security Act. Social Security Ruling 96-6p.
>
> In sum, the above residual functional capacity assessment is supported by the majority of the objective evidence which has demonstrated that the claimant's allegations of total disability due to an affective (mood) disorder are unfounded. The treatment records from Citrus Health Network, Inc., are clearly indicative of stability that has continued for years. The medical evidence has shown that his impairment has been managed properly with medication and does not prevent him from engaging in substantial gainful activity.

(R. 23).

On February 22, 2007, Dr. Berta M. Guerra completed a Treating Source Mental Health Report. (R. 285-286). The doctor opined that the Plaintiff's thought process was logical; concentration was poor; the Plaintiff was alert to person, place and time; and memory was good. (R. 285). The doctor further stated that the Plaintiff had paranoid delusions and diagnosed the Plaintiff with bipolar affective disorder type II with psychotic features. The doctor concluded that the Plaintiff was not competent to manage his own funds and was not able to work. (R. 286).

On April 10, 2008 Dr. Guerra completed a Medical Assessment of Ability to do Work-Related Activities (Mental). (R. 325-326). The doctor opined that the Plaintiff's ability to follow

7

work rules, deal with the public, interact with supervisors and maintain attention/concentration were "poor". "Poor" was defined as "ability to function in this area is seriously limited but not precluded." The doctor further opined that the Plaintiff's ability to relate to co-workers was fair to poor; ability to use judgment and function independently were fair; and the Plaintiff did not have the ability to deal with work stress. In an area asking for any limitations and medical/clinical findings which support the assessment, the doctor stated that the Plaintiff has mood swings and psychosis, difficulty interacting with others and cannot function under stress. (R. 325).

Dr. Guerra further opined that the Plaintiff did not have the ability to understand, remember and carry out complex job instructions or detailed but not complex job instructions; and the Plaintiff's ability to understand, remember and carry out simple job instructions was poor. This determination was based on the Plaintiff's difficulty with concentration and memory and being overwhelmed with moderately difficult tasks.

Finally, Dr. Guerra stated that the Plaintiff's ability to behave in an emotionally stable manner and to demonstrate reliability were poor; the ability to maintain personal appearance was fair; and the Plaintiff could not relate predictably in social situations. The doctor explained that the Plaintiff had mood swing and psychosis, is easily irritated and unpredictable in stressful situations. The doctor again concluded that the Plaintiff could not work. (R. 326).

The Plaintiff contends that the opinions of two psychological consultative evaluations support the findings of Dr. Guerra. On August 7, 2006, a Longitudinal Diagnostic Mental Health Evaluation was completed by Dr. David Echavarria. (R. 215-217). Dr. Echavarria conducted a mental status examination and determined that the Plaintiff was cooperative, tense and somewhat guarded. He further found that the Plaintiff's speech was clear, appropriate and relevant and his affect was

appropriate and congruent with his mood. (R. 216). The doctor further found the Plaintiff's mood to be depressed. Dr. Echavarria noted that the Plaintiff indicated mood swings with manic episodes, as well as diminished sleep, appetite, and energy. He noted that the Plaintiff's behavior during the examination was appropriate and there were no signs of bizarre behavior or psychosis and the Plaintiff was oriented and understood the purpose of the evaluation.

Dr. Echavarria further noted as follows:

> His associations were logical and coherent, and I did not detect a thought disorder or speech impediment. He denies auditory and visual hallucinations. He denies paranoid ideation. He was aware of current events and told me about the war in Lebanon, Fidel Castro being sick. He was able to do serial 3's but not 7's. Memory is unimpaired. He was able to remember 3 objects of 3 presented after a five-minute interval. He has diminished insight and judgment. He was able to tell me the name of the president and the governor but not the mayor. He appears to be of low-average to average intellectual ability although no formal IQ testing was undertaken. He was able to count backwards from 20 and was able to do simple mental calculations. His anxiety level is high.

(R. 216).

The doctor diagnosed the Plaintiff with Bipolar disorder, mixed, last episode manic. (R. 216). Dr. Echavarria concluded that the Plaintiff mental condition affects moderately to severely activities of daily living, socialization, concentration, and ability to engage in competitive employment. He also found that when the Plaintiff is stable he is competent to manage his own funds. (R. 217).

On January 23, 2007, Dr. Adelaida Arias, performed a consultative evaluation of the Plaintiff. (R. 273-276). With regard to the mental status evaluation, Dr. Arias stated as follows:

> Mr. Reyes was alert. He kept good eye contact. His speech was coherent, relevant and spontaneous. He likes to play pool. Mr. Reyes has been more time depressed than manic, from 3 days 2 of them he has been depressed. He tends to be withdrawn. Idel is anhedonic and

> he has days that he doesn't bath himself. Idel's affect was appropriate and his mood was depressed. He has restriction of social functioning. Mr. Reyes tends to be aggressive when he gets decompensated. He was oriented 10/10. He was able to repeat three unrelated words. He was unable to do series 7's without mistakes and was unable to spell "World" backwards. He recalls what he ate yesterday. He was able to find commonalities between fruits, animals and vehicles but he was unable to abstract proverbs so his thinking was fairly abstract. His judgment was fair as he will try to see if there [was] money in the envelope. His level of intelligence was average or above. He was able to do simple math problems. His source of information was good. He was able to follow three step instructions. He is very obsessive and compulsive and perfectionist and has routine obsessive behavior. He has to change clothes in spite that he will not take a bath. Mr. Reyes has weak coping skills. He can't tolerate stress or pressure neither he was able to tolerate criticism. He is overt controlling. In the Mental Status Folstein he scored 21/30 mild cognitive deficit. He is unable to manage funds.

(R. 274-275). The Plaintiff was diagnosed as having bipolar disorder, depressed, mixed; personality disorder; and impulse control disorder. (R. 275).

In the instant matter, it is the opinion of this Court that the ALJ's decision was supported by substantial evidence as this is not a case of the ALJ simply rejecting a treating physician on the basis of non-examining treating physicians. The ALJ rejected the opinion of Dr. Guerra on several grounds. First, the ALJ found that the extreme limitations placed by Dr. Guerra were founded on the Plaintiff's subjective complaints and not supported by the Plaintiff's own treating notes which found the Plaintiff was "doing well" and "stable" throughout most of 2008. (R. 23, 305-321). The Plaintiff's own testimony confirmed that he was doing much better on medications and the record evidence reflects the same. Further, contrary to the Plaintiff's contention, the opinions of the two consultative examiner referred to herein above, do not support the treating physicians's extreme limitations. Additionally, contrary to the Plaintiff's contention the ALJ did not give more weight to

the opinions of the two agency reviewing consultants over the opinion of the Plaintiff's treating physician. As the ALJ stated the opinions of the non-examining physicians, "must be considered and weighed as those of highly qualified physicians who are considered experts in the evaluation of the medical issues in disability claims under the Social Security Act." (R. 23).

The ALJ did not base her decision on these non-examining physicians alone, but rather used their evaluations in addition to all the evidence of record. Finally, it is up to the Commissioner to determine whether a Plaintiff is capable of work not a treating physician. This Court finds that the ALJ's report met the standard set forth by the Eleventh Circuit by specifically stating his reasons for rejecting the treating doctor's opinion. As the ALJ's decision to reject the Plaintiff's treating physicians opinion was based on the overall record evidence, it is the opinion of this Court that the decision was based on substantial evidence.

The Plaintiff's final point of contention is that the ALJ's RFC determination was not supported by substantial evidence.

The residual functional capacity is an assessment which is based upon all of the relevant evidence of a claimant's remaining ability to do work despite his impairments. <u>Lewis v. Callahan</u>, 125 F. 3d 1436, 1440 (11th Cir. 1997), <u>citing</u>, 20 C.F.R. § 404.1545(a). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess... her work-related abilities on a function by function basis.... Only after that may RFC be expressed in terms of exertional levels of work, sedentary, light, medium, heavy, and very heavy." <u>Freeman v. Barnhart</u>, 220 Fed. Appx. 957, 960 (11th Cir. 2007).

> The RFC assessment must first identify the individual's functional
> limitations or restrictions and assess his or her work-related abilities
> on a function-by-function basis, including the functions in paragraphs

11

> (b), (c), and (d) of 20 CFR 404.1545 and 416.945. Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy.

SSR 96-8p (4).

In the instant case, the ALJ went through all the evidence of record prior to making her final RFC determination. She properly determined the Plaintiff's subjective complaints, reviewed the treating and non-treating physicians' opinions and records, and properly assigned little weight to the opinion of the Plaintiff's treating psychiatrist.

After said evaluation, the ALJ determined that the Plaintiff maintained the residual functional capacity to function at all levels of physical exertion and retained the basic mental demands of competitive, remunerative, unskilled work, and the ability on a sustained basis to understand, carry out and remember simple, repetitive, routine instructions, to respond appropriately to supervision, coworkers, and usual work situations and to deal with changes in a routine work setting. (R. 20). As the ALJ based this decision on all the evidence of the record, it is this Court's opinion that the ALJ's opinion is supported by the substantial evidence in the record.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be affirmed. Accordingly, the Motion for Summary Judgment filed by the Plaintiff (D.E. #12) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #16) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have ten (10) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the

Honorable Joan A. Lenard, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this __24__ day of April, 2009.

_____
ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE