UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-22796-CIV-LENARD/DUBÉ

**IDEL REYES**,

       Plaintiff,

vs.

**MICHAEL J. ASTRUE,
Commissioner of Social Security**

       Defendant.
_____/

**ORDER ADOPTING REPORT AND RECOMMENDATIONS OF THE
MAGISTRATE JUDGE (D.E. 17); GRANTING DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT (D.E. 16); AND DENYING PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT (D.E. 12)**

**THIS CAUSE** is before the Court on the Report and Recommendation of Magistrate Judge Robert L. Dubé ("Report," D.E. 17), issued on April 17, 2009. In his Report, Magistrate Judge Dubé recommends that the Court grant Defendant's Motion for Summary Judgment (D.E. 16) and deny Plaintiff's Motion for Summary Judgment (D.E. 12). Plaintiff filed Objections to the Report on April 24, 2009 (D.E. 17). Having reviewed the Report, the Objections, and the record, the Court finds as follows.

    **I.**    **Background**

On February 21, 2006, Plaintiff protectively filed an application for supplemental security income, alleging disability beginning December 21, 2005. The claim was initially denied on August 21, 2006, and upon reconsideration on February 27, 2007. Thereafter, Plaintiff filed a timely written request for a hearing before an administrative law judge (ALJ)

Plaintiff testified at a hearing on May 8, 2008, in Miami, Florida. Following the hearing, the ALJ found that Plaintiff was not under a "disability" as defined in the Social Security Act, 42 U.S.C. §§ 1381 et seq. On September 25, 2008, the Appeals Council of the Social Security Administration denied Plaintiff's request for review. Thus, the decision of the ALJ stands as the final decision of the Commissioner.

### A.   Plaintiff's age, education, and work experience

Plaintiff, age 24 as of May 8, 2008, completed twelfth grade in Cuba. (Administrative Transcript ("Tr.") 30.) His previous relevant work experience in the United States is limited to loading and unloading boxes for approximately one year. (Tr. 31-32.)

### B.   Plaintiff's admission to Citrus Health Network, Inc.

On December 23, 2005, Plaintiff was admitted to Citrus Health Network, Inc. ("Citrus") for in-patient treatment and was noted to be "out of control," not working, spending "recklessly," not sleeping properly, threatening to kill anyone who contradicted him, and had attempted to kill himself. (Tr. 259-72.) On admission, Juan F. Ortiz, M.D., assessed "schizophrenic condition" and a Global Assessment of Functioning (GAF) score of 35.[1] (Tr. 259.)

Plaintiff was placed under observation, and received medications and therapy. (Tr.

---

[1] GAF is the clinician's judgment of the individual's overall level of functioning, not including impairments due to physical or environmental limitations. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders Text Revision 32-34 (4th ed. 2000) (DSM-IV-TR). A GAF of 31 through 40 is characterized by some impairment in reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. See DSM-IV-TR at 34.

259.) On January 4, 2006, Plaintiff was discharged in "good and stable" condition. (Tr. 259.) He denied suicidal or homicidal ideation, and his discharge diagnosis was bipolar disorder, manic with psychosis. (Tr. 259.) Dr. Ortiz assessed a GAF score of 55[2] and prescribed the antipsychotic drug Risperdal. (Tr. 259.) One week later, Plaintiff returned to Citrus for follow-up and was noted to be feeling "better." (Tr. 254-58.) He was alert and oriented times three, and was "mildly" anxious. (Tr. 254.) Plaintiff also had no symptoms of psychosis and was instructed to continue Risperdal. (Tr. 254.)

### C. Plaintiff's treatment with Dr. Guerra, Plaintiff's treating psychiatrist

#### 1. Dr. Guerra's examinations of Plaintiff

On March 10, 2006, Plaintiff presented to Berta Guerra, M.D., at Citrus. (Tr. 252.) Dr. Guerra noted that Plaintiff felt "well," slept "well," and had "good" energy. (Tr. 252.) Plaintiff denied depression. (Tr. 252.) He also denied any psychotic symptoms and suicidal or homicidal ideation. (Tr. 252.) Dr. Guerra changed Plaintiff's medications. (Tr. 252.)

Plaintiff periodically returned to Dr. Guerra for further treatment. On September 22, 2006, Plaintiff returned to Dr. Guerra and reported that he felt "well" and slept "well." (Tr. 250.) Dr. Guerra noted that Plaintiff did not groom himself "well." (Tr. 250.) Plaintiff denied depression and suicidal or homicidal ideation. (Tr. 250.) Dr. Guerra also noted that Plaintiff

---

[2] A GAF of 51 through 60 is characterized by moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers). See DSM-IV-TR at 34.

3

was compliant with medication and had "no aggressive behavior." (Tr. 250.) On September 22, 2006, Plaintiff denied depression and suicidal or homicidal ideation. (Tr. 249.) He felt "well" and slept "well," and Dr. Guerra noted that Plaintiff's appetite was "good" (Tr. 249.)

On October 20, 2006, Plaintiff reported that he felt "happy" and denied depression (Tr. 248.) Plaintiff's sleep had been "excessive," but his energy and appetite were "good." (Tr. 248.) Dr. Guerra noted that Plaintiff was compliant with medication and experienced no side effects (Tr. 248.) One month later, Plaintiff felt "well" and had no psychotic symptoms. (Tr. 247.) His appetite and sleep were "good." (Tr. 247.) Plaintiff was cooperative and his mood was euthymic (Tr. 247.) He denied suicidal or homicidal ideation. (Tr. 247.) Dr. Guerra noted that Plaintiff was compliant with medications (Tr. 247.)

On December 21, 2006, Dr. Guerra noted similar findings, and indicated Plaintiff was "stable." (Tr. 246.) Plaintiff had also decreased his smoking and lost weight due to dieting. (Tr. 246).

On January 25, 2007, Plaintiff reported mood swings, but stated they were "manageable overall." (Tr. 245.) His sleep and appetite were "stable," and he denied any medication side effects. (Tr. 245.) On examination, Plaintiff was alert and oriented times three. (Tr. 245.) He was well groomed, made good eye contact, and exhibited no psychomotor abnormalities. (Tr. 245.) His speech was normal, and his mood was "somewhat" anxious. (Tr. 245.) Plaintiff's thought process was logical and goal-directed. (Tr. 245.) He denied depression and suicidal or homicidal ideation. (Tr. 245.)

4

On February 22, 2007, Plaintiff reported that he felt "well," and Dr. Guerra noted that Plaintiff's mood swings were "stable." (Tr. 244.) He slept "well" and his appetite was "good" (Tr. 244.) Plaintiff experienced no medication side effects, and Dr. Guerra noted that Plaintiff's bipolar disorder was "better now." (Tr. 244.)

On March 22, 2007, Plaintiff felt "well" and denied depression and psychotic symptoms. (Tr. 243.) His appetite and sleep were "good," and he denied medication side effects. (Tr. 243.) On examination, Plaintiff was alert and oriented times three. (Tr. 243). Plaintiff was "casually" dressed and groomed. (Tr. 243.) His mood was euthymic (normal, non-depressed). (Tr. 243.) Dr. Guerra noted that Plaintiff's bipolar disorder was "stable." (Tr. 243.) One month later, Plaintiff felt "well," but stated that he felt "sad" the previous week (Tr. 242.) Dr. Guerra noted "mild" mood swings from happy to sad. (Tr. 242.)

On May 10, 2007, Plaintiff felt "better," but continued to feel "sad." (Tr. 241.) He reported that his mood had gone from happy to sad to angry. (Tr. 241.) Plaintiff denied psychotic symptoms. (Tr. 241.) On examination, Plaintiff was alert and oriented times three, and had no suicidal or homicidal ideation. (Tr. 241.) Dr. Guerra adjusted Plaintiff's medications (Tr. 241.)

One month later, Plaintiff felt "better." (Tr. 240.) He slept "well," and his appetite was "good." (Tr. 240.) Plaintiff was alert and oriented times three, and his mood was "mildly" dysphoric. (Tr. 240.)

In July 2007, Plaintiff reported that he felt "fine" and "well." (Tr. 238-39.) He denied

5

depression and psychotic symptoms. (Tr. 238- 39.) On examination, Plaintiff was alert and oriented times three with a euthymic mood. (Tr. 238.)

On August 27, 2007, Plaintiff felt "well." (Tr. 312.) He had no mood swings or hypomania, and he denied psychotic symptoms. (Tr. 312.) Plaintiff's sleep and appetite were noted to be "good," and he exercised daily. (Tr.312.) Plaintiff was cooperative and his mood was euthymic. (Tr. 312.) Dr. Guerra noted that Plaintiff's bipolar disorder was "stable." (Tr. 312.) One month later, Dr. Guerra noted similar examination findings, and Plaintiff reported that he felt "fine." (Tr. 311.) Dr. Guerra again noted that Plaintiff's bipolar disorder was "stable." (Tr. 311.)

On October 22, 2007, Plaintiff felt "well" and denied mood swings. (Tr. 310.) He was compliant with medication and experienced no side effects. (Tr. 310.) On examination, Plaintiff was cooperative. (Tr. 310.) He was alert and oriented times three with a euthymic mood and no suicidal or homicidal ideation. (Tr. 310.) Dr. Guerra noted that Plaintiff's bipolar disorder was "stable." (Tr. 310.) One month later, Dr. Guerra noted similar examination findings, and again indicated that Plaintiff was "stable." (Tr. 309.) Plaintiff felt "well" and denied mood swings. (Tr. 309.) He slept "well" and his appetite was "good." (Tr. 309.)

On December 17, 2007, Plaintiff felt "well," and denied hypomania. (Tr. 308.) His appetite was "good" and he slept "well." (Tr. 308.) Plaintiff was compliant with medication and experienced no side effects. (Tr. 308.) On examination, he was cooperative, alert, and

6

oriented times three. (Tr. 308.) Plaintiff's mood was euthymic, and he denied suicidal or homicidal ideation. (Tr. 308.) One month later, Dr. Guerra noted similar examination findings. (Tr. 307.) Plaintiff felt "well" and denied depression, hypomania, and psychotic symptoms (Tr. 307.)

On February 14, 2008, Plaintiff felt "well," and denied hypomania and psychotic symptoms. (Tr. 306.) He slept "well," and his appetite was "good." (Tr. 306.) Plaintiff's mood was euthymic, and he had no suicidal or homicidal ideation. (Tr. 306.) Plaintiff was compliant with medication and experienced no side effects. (Tr. 306.) Dr. Guerra noted that Plaintiff's bipolar disorder was "stable." (Tr. 306.)

One month later, Plaintiff felt "well" and had no mood swings, hypomania, or psychotic symptoms. (Tr. 305.) On examination, Plaintiff was alert and oriented times three with a euthymic mood and no suicidal or homicidal ideation. (Tr. 305.) Plaintiff was compliant with medication, and he was "stable." (Tr. 305.)

### 2. Dr. Guerra's assessments of Plaintiff's ability to work

On February 21, 2007, Dr. Guerra completed a Treating Source Mental Health Report. (Tr. 285-86.) Dr. Guerra stated that Plaintiff's mood was dysphoric, and his concentration was "poor." (Tr. 285.) Dr. Guerra also noted that Plaintiff's thought process was logical, his memory was "good," and he was cooperative and oriented times three. (Tr. 285-86.) Dr. Guerra indicated that Plaintiff had bipolar disorder type 2 with psychotic features, and opined that Plaintiff could not work. (Tr. 286.)

On April 10, 2008, Dr. Guerra completed a Medical Assessment of Ability to Do Work-Related Activities (Mental). (Tr. 325-26.) Dr. Guerra opined that Plaintiff had "poor" ability to follow work rules, deal with the public, interact with supervisors, maintain attention/concentration, behave in an emotionally stable manner, demonstrate reliability, and understand, remember, and carry out simple job instructions. (Tr. 325-26.) Plaintiff had "fair" to "poor" ability to relate to co-workers, and "fair" ability to use judgment, function independently, and maintain personal appearance. (Tr. 325-26.) Plaintiff had no ability to deal with work stress; relate predictably in social situations; understand, remember, and carry out complex job instructions; and understand, remember, and carry out detailed, but not complex job instructions. (Tr. 325-26.) Dr. Guerra concluded that Plaintiff "c[ould] not work." (Tr. 326.)

### D.   Plaintiff's consultative psychological evaluations

#### 1.   Dr. Echavarria

Meanwhile, on August 7, 2006, Plaintiff underwent a consultative psychological evaluation performed by David Echavarria, Ph.D. (Tr. 215-17.) Plaintiff reported that he suffered from bipolar disorder, and had been hospitalized twice for manic-like episodes. (Tr. 215.) Dr. Echavarria noted that Plaintiff indicated typical activities of daily living for his age and status. (Tr. 216.) On examination, Plaintiff was cooperative, "rather" tense, and "somewhat" guarded. (Tr. 216.) He was oriented, and his speech was clear, appropriate, and relevant. (Tr. 216.) Plaintiff's mood was depressed, and he reported diminished sleep,

8

appetite, and energy. (Tr. 216.) His behavior during the examination was "appropriate" with no signs of bizarre behavior or psychosis. (Tr. 216.) Plaintiff's memory was unimpaired, and he had "fair" concentration. (Tr. 216.) Plaintiff's associations were logical and coherent, and he denied paranoid ideation and auditory or visual hallucinations. (Tr. 216.) He had diminished insight and judgment. (Tr. 216.) Dr. Echavarria noted that Plaintiff's anxiety level was "high," but he did not detect a thought disorder or speech impediment. (Tr. 216.) Dr. Echavarria's impression was bipolar disorder, mixed, last episode manic. (Tr. 216.) He opined that Plaintiff's mental condition "moderately to severely" affected his activities of daily living, socialization, concentration, and ability to engage in competitive employment. (Tr. 216.)

### 2.     Dr. Arias

On January 23, 2007, Plaintiff presented to Adelaida Arias, Ph.D., for a consultative psychological examination. (Tr. 273-76.) Plaintiff was alert and oriented, with a depressed mood. (Tr. 274.) He had good eye contact, and his speech was coherent, relevant, and spontaneous. (Tr. 274.) Plaintiff tended to be withdrawn and had days when he was anhedonic (unable to experience pleasure from normally pleasurable life events) and did not bathe himself. (Tr. 274.) Plaintiff's judgment was "fair," and his intelligence was average or above. (Tr. 274.) He was able to follow three-step instructions and perform simple math problems. (Tr. 274.) Plaintiff's Mental Status Folstein score was 21/30, which indicated "mild" cognitive deficit. (Tr. 275.) Dr. Arias stated that Plaintiff had restriction of social

functioning and was "very" obsessive and compulsive. (Tr. 274.) She also stated that Plaintiff could not tolerate stress or pressure. (Tr. 275.) Dr. Arias assessed bipolar disorder, depressed, mixed; personality disorder; and impulse control disorder. (Tr. 275.) In a Functional Assessment, Dr. Arias opined that Plaintiff could understand and retain simple instructions, but could not persist on simple, repetitive tasks for two hours, or interact with others to complete simple, repetitive tasks. (Tr. 279.) Dr. Arias stated that Plaintiff had "poor" ability to interact with co-workers or supervisors because he was suspicious and had a poor tolerance for pressure or criticism. (Tr. 279.)

### E.   Plaintiff's testimony at administrative hearing

Plaintiff testified at an administrative hearing held on May 8, 2008. (Tr. 30-43.) Plaintiff lived with his mother, brother, and grandmother. (Tr. 37.) He previously worked lifting, carrying, and unloading boxes. (Tr. 31.) Plaintiff worked until November 2005, and stated that he stopped working because "there was no more work" and he "got sick." (Tr. 31.) Plaintiff also testified that he was hospitalized in Cuba for taking 45 pills. (Tr. 41.) He was also Baker-Acted in the United States for a period of two months. (Tr. 41-42.)

He reported that he felt depressed three times per week, had "lots" of anxiety, and could not concentrate "very well." (Tr. 31, 35-36.) He denied any suicidal thoughts. (Tr. 36.) Plaintiff claimed that he would "sometimes" go two days without bathing, and spend "almost" the entire day in bed when he felt depressed. (Tr. 37-38.) Plaintiff also stated that he occasionally felt "very happy," and when he felt "very happy" he would go to stores and

10

attempt to buy expensive items even though he did not have the money to purchase them. (Tr. 31- 33.) He also testified that he ate at a Chili's restaurant a year prior to the hearing, but did not have money to pay so the police were called. (Tr. 33.)

Plaintiff reported that medication had "helped [him] out a lot" and he felt "better." (Tr. 35.) He also reported that he had recently changed medication, and his new medication "help[ed] more" with depression and anxiety. (Tr. 35.)

Plaintiff testified that his activities consisted of watching television. (Tr. 36.) He read "a little," but he did not like reading. (Tr. 36.) Plaintiff stated that he did not perform household chores because he did not like doing chores, and it was his mother's and grandmother's job. (Tr. 37.) Plaintiff went "out" alone, and claimed he had no friends and engaged in no social activities. (Tr. 34, 42-43.) He also stated that he liked to be with his family. (Tr. 36.)

### F.    The ALJ's decision

On June 25, 2008, the ALJ entered her decision denying Plaintiff's claim and finding that Plaintiff was not disabled. (Tr. 15-24.) Specifically, the ALJ found that Plaintiff had an affective (mood) disorder, but that his impairment did not meet or medically equal the regulatory definition of disability. The ALJ found that, in activities of daily living, in social functioning, and with regard to concentration, Plainitff had moderate difficulties at most. (Tr. 19.) The ALJ also found that there was no evidence that Plaintiff experiences symptoms resulting in repeated periods of decompensation of extended duration, an inability to function

11

outside of a structured environment, or an inability to function independently outside of his home.  (Tr. 19.)

The ALJ next found that Plaintiff has the residual functional capacity to function at all levels of physical exertion, and retains the basic mental demands of competitive, remunerative, unskilled work, and the ability on a sustained basis to understand, carry out and remember simple, repetitive, routine instructions, to respond appropriately to supervision, coworkers, and usual work situations, and to deal with changes in a routine work setting. (Tr. 20.)  In making these findings, the ALJ noted that, although Plaintiff's medically determinable impairment could reasonably be expected to produce the symptoms complained of by Plaintiff, the statements by Plaintiff concerning the intensity, persistence and limiting effect of these symptoms are not credible to the extent that they are inconsistent with her findings of Plaintiff's residual functioning capacity.  (Tr. 21.)  Specifically, the ALJ found that Plaintiff was stabilized with medication, was able to leave home alone, was able to interact with the public; additionally, the progress notes from Dr. Guerra show steady improvement of Plaintiff's symptoms from the time he was discharged from Citrus in early 2006. (Tr. 21-22.)  The ALJ found that Plaintiff's medications do not incapacitate him and any limitations are self-imposed.   (Tr. 22.)

The ALJ further found that Plaintiff's claims as to him limitations were not credible. (Tr. 23.) The ALJ gave little weight to Dr. Guerra's assessments because they were solely based on Plaintiff's statements to her.  (Tr. 23.)  Additionally, Dr. Guerra's opinions as to

Plaintiff's ability to work were entitled to little weight because such determinations are reserved to the Commissioner. (Tr. 23.) The ALJ found that the opinions of non-examining physicians who rendered opinions on behalf of the State of Florida supported her findings as to Plaintiff's ability to work. (Tr. 23.)

Finally, the ALJ found that claimant was capable of performing his past work as a laborer. (Tr. 23.)

## II. Report

In his Report, the Magistrate Judge recommends that the Court grant the Commissioner's Motion for Summary Judgment and deny Plaintiff's Motion for Summary Judgment. The Magistrate Judge found that the ALJ's decision was supported by substantial evidence and did not err in discounting Dr. Guerra's assessments. Further, the Magistrate Judge concurred with the ALJ that it is up to the Commissioner, not Plaintiff's treating physician, to render an opinion as to Plaintiff's ability to work. Finally, the Magistrate Judge found that the ALJ's determination regarding Plaintiff's residual functional capacity was supported by substantial evidence.

## III. Objections

In his Objections, Plaintiff makes three arguments for disregarding the Report and remanding this matter to the Commissioner for reversal of the decision to deny Plaintiff benefits: (1) the ALJ failed to comply with 20 C.F.R. § 416.927 by failing to give adequate weight to the opinion of the Plaintiff's treating psychiatrist, particularly in view that the

opinion of the treating psychiatrist is supported by the reports and opinions of the two consultative psychologists who examined the Plaintiff at the request of the Social Security Administration; (2) the ALJ gave more weight to the opinions of two agency reviewing consultants over the opinion of the Plaintiff's long-term treating psychiatrist and the two consultative psychologists that examined the Plaintiff at the request of the Social Security Administration; and (3) Plaintiff's residual functional capacity arrived at by the Administrative Law Judge does not include the limitations placed on the Plaintiff by her long-term treating psychiatrist, Berta Guerra, M.D., nor does it include the limitations also placed on the Plaintiff by consultative psychologists, David Echevarria, Ph.D., and Adelaida Arias, Ph.D.

### IV.   Discussion

The Court will address the three arguments in Plaintiff's Objections in turn. First, though, the Court will briefly lay out the standard for reviewing decisions of the Commissioner.

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards. See Walker v. Bowen, 826 F.2d 996, 999 (11th Cir.1987). The Court will not disturb the Commissioner's decision if, in light of the record as a whole, it appears to be supported by substantial evidence. See 42 U.S.C. § 405(g); MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir.1986). Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); MacGregor, 786 F.2d at 1053. The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir.1986). But the court should not reweigh the evidence. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir.1986).

> **A.  There was substantial evidence for discounting the opinion of Dr. Guerra.**

The law of the Eleventh Circuit is clear that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. MacGregor, 786 F.2d at 1053; Broughton v. Heckler, 776 F.2d 960, 961-62 (11th Cir.1985). "Good cause" exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the physician's own medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. MacGregor, 786 F.2d at 1053.

As pointed out by the Magistrate Judge, there was substantial evidence supporting the ALJ's decision to give less than controlling weight to Dr. Bertha's opinion. First of all, the record evidence demonstrates that Plaintiff markedly improved from the date of his admission to Citrus until the date of his hearing, such that any limitations experience by Plaintiff had significantly abated. Apparently, the course of therapy and medication greatly

stabilized Plaintiff. Further, prior to his admission to Citrus, Plaintiff had worked as a manual laborer and had stopped working, at least in part, because "there was no more work." As such, the record evidence supports a finding contrary to Dr. Bertha's opinions in her two written reports, and, as such, good cause existed for giving lesser weight to her opinions. See Broughton v. Heckler, 776 F.2d at 961-62. Second, the ALJ's finding that Dr. Guerra's reports were based on Plaintiff's subjective reports and contrasted with the medical evidence on record was supported by substantial evidence. As pointed out by the Commissioner in his Motion for Summary Judgment, while Dr. Guerra opined that Plaintiff was unable to work, her own treatment notes and the reports of the consulting physicians belie her conclusions:

> Dr. Guerra's treatment notes demonstrate that Plaintiff's symptoms generally improved with treatment and medication. By February 2007, Dr. Guerra noted that Plaintiff's mood swings were "stable" and his bipolar disorder was "better." Dr. Guerra's treatment notes further indicate that Plaintiff's impairments remained "stable" throughout the remainder of 2007 and 2008. Additionally, contrary to the limitations expressed by Dr. Guerra and consistent with the ALJ's RFC assessment, the consultative examiner Dr. Echavarria noted that Plaintiff's memory was unimpaired and he had "fair" concentration. Similarly, although Dr. Arias stated that Plaintiff could not persist in completing simple repetitive tasks, she also noted that Plaintiff was able to follow three-step instructions and perform simple math problems.

(Commissioner's Motion, D.E. 16 at 14.) Lastly, the ALJ correctly noted that it did not need to consider Dr. Guerra's opinions as to Plaintiff's ability to work, as such a decision is reserved to the Commissioner. See 20 C.F.R. § 416.903 (2008).

> **B.   The ALJ properly weighed the opinions of the two agency reviewing consultants.**

Plaintiff contends in his second objection that the ALJ stated in her decision that she

16

was giving more weight to the opinions of the state agency reviewing consultants than those given to the assessments of Dr. Guerra and the consultative psychologists. This is incorrect. The ALJ merely stated in one paragraph in her decision that her conclusions were supported by the opinions of the state agency reviewing consultants; additionally, she specifically stated that these opinions were not entitled to controlling weight but must still be considered and weighed as expert opinions. (Tr. 23.) Further, this single paragraph was the only time the ALJ mentioned the opinions of the state agency reviewing consultants in her decision.

While Plaintiff is correct that the Eleventh Circuit has held that the good cause required before a treating physician's opinions may be accorded little weight is not provided by the report of a non-examining physician where it contradicts the report of the treating physician, see Lamb v. Bowen, 847 F.2d 698, 703 (11th Cir. 1988), this is not the situation presented by the ALJ's decision. In this case, as noted above, the ALJ found good cause for according lesser weight to Dr. Guerra's opinion based on Dr. Guerra's treatment notes, Plaintiff's testimony, and other record evidence. As such, Plaintiff's second objection is without merit

### C. Substantial evidence supported the ALJ's findings regarding Plaintiff's residual functioning capacity.

Plaintiff objects to the ALJ's findings regarding Plaintiff's residual functioning capacity because the ALJ allegedly failed to include the limitations of Dr. Guerra and the two consultative psychologists, Drs. Echevarria and Arias. Plaintiff's objection is blatantly contradicted by the ALJ's decision. The ALJ based her decision on the fact that, following

his admission to Citrus, Plaintiff's condition had greatly stabilized such that Plaintiff told Dr. Guerra throughout the course of his treatment that he felt "well" and Dr. Guerra's treatment records reflected that Plaintiff did not suffer from mood swings, pyschosis, or delusions, and that he slept well and had a good appetite. (Tr. 21.) Further, Plaintiff testified at the hearing that he does not do chores around the house because he does not like to, but that he goes out of the house alone and interacts with the public. (Tr. 21.)

Next, contrary to Plaintiff's allegations in his third objection, the ALJ reviewed Dr. Guerra's treatment notes and written reports in detail, as well as the reports of the consultative psychologists, Drs. Echavarria and Arias. (Tr. 22.) After noting the diagnoses of these doctors, the ALJ found that the diagnoses were contradicted by Dr. Guerra's treatment notes, which documented a steady recovery and a positive reaction to the course of therapy and medication. (Tr. 22.) Finally, as noted above, the ALJ found that Dr. Guerra's report did not deserve conclusive weight. As such, there is no merit to Plaintiff's claim that the ALJ did not consider the limitations set forth in the reports of Dr. Guerra and the two consultative psychologists, Drs. Echevarria and Arias. Rather, the ALJ set forth those reported limitations in detail and then explained why those assessments were not worthy of controlling weight in light of the record evidence to the contrary. As such, substantial evidence supported the ALJ's findings regarding Plaintiff's residual functioning capacity.

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. The Report of Magistrate Judge Robert L. Dubé (D.E. 17), issued on April 27, 2009, is **ADOPTED**;

2. Defendant's Motion for Summary Judgment (D.E. 16) is **GRANTED**;

3. Plaintiff's Motion for Summary Judgment (D.E. 12) is **DENIED**;

4. This case is **CLOSED**;

5. All pending motions are **DENIED AS MOOT**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 6th day of August, 2009.

_____
**JOAN A. LENARD**
**UNITED STATES DISTRICT JUDGE**